UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHANSON TRANSPORTATION SERVICE,<br><br>    Plaintiff,<br><br>    v.<br><br>SHELBY TRANSPORTATION, INC.,<br><br>    Defendant. | Case No. 24-cv-02959-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Docket No. 18 |

Plaintiff Johanson Transportation Service ("JTS") has sued Defendant Shelby Transportation, Inc. ("Shelby") for breach of contact and liability under the Carmack Amendment. *See* 49 U.S.C. § 14706. Currently pending before the Court is JTS's motion for default judgment. Having considered the papers submitted (Shelby did not file an opposition to the motion, nor did it appear at the hearing on the motion), the Court hereby **GRANTS** JTS's motion for relief.

## I.    FACTUAL & PROCEDURAL BACKGROUND

A.    <u>Complaint</u>

In its complaint, JTS alleges as follows.

Shelby is a company licensed as a for-hire motor carrier of property. It operates in interstate commerce and is registered with the Federal Motor Carrier Safety Administration. *See* Compl. ¶ 4. JTS is a transportation and logistics broker. *See* Compl. ¶ 2. In October 2022, JTS and Shelby entered into an Agreement for Motor Carrier Services pursuant to which Shelby agreed to transport property for or on behalf of JTS's customers. *See* Compl. ¶ 8 & Ex. A (agreement).

Section 19 of the parties' agreement provides that:

(1) Shelby "shall have sole and exclusive care, custody, and control of each shipment

1  tendered by [JTS] from the time of pick-up until completion of delivery of the
2  shipment to the consignee." Compl., Ex. A (Agmt. § 19.A).
3  (2) Shelby "shall be liable to [JTS's] customer, or to [JTS], as assignee of the claim, for
4  loss of, damage to, or delay of shipments according to the provisions of 49 U.S.C.
5  Section 14706 [*i.e.*, the Carmack Amendment), regardless of the actual jurisdiction of
6  loss or performance." Compl., Ex. A (Agmt. § 19.A).
7  (3) Shelby "shall be liable for the full, actual value of each shipment transported
8  hereunder, which shall be the invoice price of the goods at destination." Compl., Ex. A
9  (Agmt. § 19.B).
10 (4) JTS or its customer "shall file a written claim (i) for loss, damage, or delay to
11 shipments within nine (9) months from the date of delivery, and (ii) or non-delivery
12 within nine (9) months of the date that delivery reasonably should have been made."
13 Compl., Ex. A (Agmt. § 19.B).
14 In addition, § 21 of the parties' agreement provides that:
15 (5) Shelby "shall indemnify, defend, and hold [JTS], its customers, consignors, and
16 consignees . . . harmless from and against any and all losses, harm, injuries, damages,
17 claims, [etc.] arising from, or in connection with services provided by [Shelby]."
18 Compl., Ex. A (Agmt. § 21).

In or about July 2023, JTS engaged Shelby to transport seventeen pallets of wines and spirits from Pennsylvania to California for a JTS customer. *See* Compl. ¶¶ 11-12. Shelby picked up the cargo in good condition from Pennsylvania on July 14, 2023, but, upon delivery, seven pallets of goods were missing. *See* Compl. ¶¶ 12-13. As a result of the loss, JTS's customer filed a claim with JTS in the amount of $60,302.48. JTS in turn submitted the claim to Shelby on October 17, 2023. *See* Compl. ¶ 14. JTS also sent Shelby a demand letter on January 31, 2024. *See* Compl. ¶ 15. JTS's customer has assigned its claim against Shelby to JTS. *See* Compl. ¶ 17.

Based on, *inter alia*, the above allegations, JTS has asserted two causes of action against Shelby: (1) liability under the Carmack Amendment and (2) breach of contract. In its complaint, JTS seeks damages in the amount of $60,302.48, its attorneys' fees and costs as provided for by

2

the parties' agreement,[1] and "[s]uch other relief as this Court deems just and proper." Compl., Prayer for Relief.

B. Default

JTS initiated this lawsuit in May 2024. It served the summons and complaint on Shelby, by personal service, in June 2024. *See* Docket No. 12 (proof of service). After Shelby failed to respond, JTS moved for entry of default. *See* Docket No. 15 (motion). The Clerk of the Court entered Shelby's default in September 2024. *See* Docket No. 16 (notice). JTS subsequently filed the pending motion for default judgment in November 2024. *See* Docket No. 18 (motion).

## II.   DISCUSSION

A. Service of Process

As an initial matter, the Court must first assess the adequacy of the service of process on the defendant. *See Valtierra v. Warden Sec. Assocs., Inc.*, No. 24-cv-00496-SVK, 2024 U.S. Dist. LEXIS 183943, at *2-3 (N.D. Cal. Oct. 8, 2024). In a prior order, the Court asked JTS to provide supplemental briefing on the issue of service of process. *See* Docket No. 20 (order).

JTS has submitted the following evidence:

- In late April 2024 – a few weeks before the complaint was filed in this case, *see* Docket No. 1 (complaint) – JTS used a process server to try to serve documents on Shelby at the Colorado address listed on the parties' complaint. *See* Robinson Decl., Ex. A (email from process server). Service was not successful. The process server stated: "I spoke with an individual who identified themselves as the corporate officer and they stated subject no longer employed. At the address I observed a package/mail addressed to another. This is the intelligence office, they are no longer the registered agent for this company." Robinson Decl., Ex. A.
- JTS learned from the U.S. Department of Transportation website that Shelby still listed the Colorado address but the status of the company was listed as "inactive."

---

[1] Section 35 of the agreement provides as follows: "The prevailing party in any litigation or arbitration will be entitled to recover from the other party all of the costs and expenses incurred by the prevailing party in connection with such litigation or arbitration, including, without limitation, reasonable attorneys' fees and interest from the date of loss." Compl., Ex. A (Agmt. § 35).

*See* Robinson Decl., Ex. B (DOT website).

- The California Secretary of State website indicated that Shelby also used an address in San Francisco (for both the "principal address" and the "mailing address"). *See* Robinson Decl., Ex. C (Secretary of State website).

- After the complaint was filed in this case, JTS had a process server attempt service at the San Francisco address. Service of process was attempted on five different occasions in May and June 2024. The process server indicated, *inter alia*, that the elevator for the fifth floor (where Shelby was located) was locked and that the reception on the second floor was empty or nonresponsive. *See* Robinson Decl., Ex. D (nonservice report).

- JTS therefore made the decision to try to serve #1 A+ Agents of Process Inc. (hereinafter "#1 A+"). #1 A+ was identified as the "Blanket Company" with the U.S. Department of Transportation. *See* Robinson Decl., Ex. B (DOT website). As explained on the Department of Transportation website, a blanket company is a process agent, *i.e.*, "a representative upon whom court papers may be served in any proceeding brought against a motor carrier, broker, or freight forwarder." https://www.fmcsa.dot.gov/registration/process-agents (last visited 1/23/2025); *see also* Supp. Br. at 2 n.1.

- #1 A+ in turn has agents for service of process. The agent listed for the state of California is On Call Legal Inc., which has a Los Angeles address. *See* Robinson Decl., Ex. E (DOT website).

- On June 28, 2024, JTS's process server effected personal delivery at the Los Angeles address. *See* Docket No. 12 (proof of service); Robinson Decl., Ex. F (same).

- On September 10, 2024, JTS sent an email to Shelby (at shelbytransportation1@gmail.com), noting that no response to the complaint had been filed and that JTS would proceed with seeking a default judgment. *See* Robinson Decl., Ex. G (email). JTS had used this email to communicate with

4

Shelby in October of the prior year.  *See, e.g.*, Robinson Decl., Ex. H (emails).

- JTS moved for entry of default on September 13, 2024, and the Clerk of the Court entered Shelby's default several days later.  *See* Docket Nos. 15-16 (motion and notice of entry of default).

- Several months later, on November 4, 2024, JTS filed the currently pending motion for default judgment.

- In late November 2024, JTS emailed Shelby at the email address above and at shelbytransportationinc01@gmail.com, informing Shelby that JTS had filed its motion for default judgment.  JTS had also used this second email to communicate with Shelby in October 2023.  *See, e.g.*, Robinson Decl., Ex. H (emails).

- On December 6, 2024, the Court issued its order seeking additional information regarding service of process.  *See* Docket No. 20 (order).  Subsequently, on December 10, 2024, JTS hand delivered certain "case documents to the mailroom of [Shelby's] business address."  Robinson Decl. ¶ 9 & Ex. I (picture); *see also* Supp. Br. at 3-4 (representing that the case documents were the motion for default judgment and that the business address served was the San Francisco address).  The following day (December 11, 2024), JTS also had a process server personally serve On Call Legal with its motion for default judgment.  *See* Robinson Decl., Ex. J (proof of service).

Based on the evidence submitted, the Court is satisfied that JTS has properly effected service of process – specifically, of the summons and complaint – on Shelby.  Shelby is a corporation and, under Federal Rule of Civil Procedure 4(h), a corporation may be served by personally delivering a copy of the summons and complaint to "an officer, a managing or general agent, *or any other agent authorized by appointment* or by law to receive service of process."  Fed. R. Civ. P. 4(h).  JTS has provided sufficient evidence that Shelby has appointed #1 A+ as its agent for service of process, and #1 A+ has in turn designated On Call Legal its agent in California.

/ / /

B.   *Eitel* Factors

Under Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a party after the clerk has entered the party's default. *See* Fed. R. Civ. P. 55(a)-(b). Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether a default judgment is appropriate, a court considers several factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Many of the above factors weigh in favor of a default judgment. For example, as to the first factor, if the motion for default judgment were to be denied, then JTS would likely be prejudiced as it would be left without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. 03-cv-04058, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

As for the fourth *Eitel* factor, the sum of money sought is tailored to the alleged misconduct by Shelby. *See, e.g.*, Compl. ¶¶ 14, 17 & Ex. C (alleging that JTS's customer filed a claim against JTS totaling $60,302.48 and that the customer subsequently assigned the claim to JTS after JTS paid the customer that amount).

As to the fifth, sixth, and seventh Eitel factors, because Shelby has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts. Nor is there any indication that Shelby's default was due to excusable neglect. And

6

1   while public policy favors decisions on the merits, *see Eitel*, 782 F.2d at 1472, Shelby's choice not
2   to defend this action renders a decision on the merits "impractical, if not impossible." *PepsiCo*,
3   238 F. Supp. 2d at 1177.  In this regard, it is worth noting that, after the Court's order asking for
4   more information on service of process, JTS left a copy of its motion for default judgment on
5   Shelby at its business address and then delivered a copy of the same to On Call Legal (the agent
6   for #1 A+, which in turn is Shelby's agent for service of process).

The only remaining factors that warrant additional analysis are the second and third *Eitel* factors – *i.e.*, the merits of JTS's substantive claims and the sufficiency of those claims.  As noted above, JTS has asserted two claims against Shelby: (1) liability under the Carmack Amendment and (2) breach of contract.

"[T]o make a prima facie case under the Carmack Amendment, a shipper [has] to establish only three elements: (i) that the initial carrier received the cargo in good condition; (ii) that the cargo was lost or damaged; and (iii) the amount of actual loss or damages."  *AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 796 Fed. Appx. 96, 98 (3d Cir. 2020); *see also Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964); *CAN Ins. Co. v. Hyundai Merch. Mar. Co., Ltd.*, 747 F.3d 339, 353 (6th Cir. 2014) (adding that, if the plaintiff establishes this prima facie case, then "the burden shifts to the defendant-carrier to show both that it was not negligent and that the damage was instead due to one of five excepted causes").

Here, JTS has pled facts – which the Court accepts as true in light of Shelby's default – that Shelby took possession of the cargo at issue "in good order and condition"; that Shelby "acknowledged receipt of the Cargo in good order"; that the cargo was lost in part (seven out of seventeen pallets of goods); that the customer made a claim against JTS based on that loss; and that the customer assigned its claim to JTS.  Compl. ¶¶ 19-24.  Given these allegations, JTS has sufficiently pled a claim pursuant to the Carmack Amendment.

Similarly, JTS has sufficiently plead a claim for breach of contract.  *See Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1198 (2015) (stating that "[t]he elements of a cause of action for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff") (internal

7

1    quotation marks omitted). JTS has alleged that it had a contract with Shelby (the Agreement for
2    Motor Carrier Services); that the contract required Shelby to deliver cargo in good condition; that
3    the cargo was picked up in good condition; and that Shelby breached the contract because it failed
4    to deliver some of the cargo as it was lost. *See* Compl. ¶¶ 12, 28-33; *see also* Compl., Ex. A
5    (Agmt. § 19.A) (providing that Shelby "shall have sole and exclusive care, custody, and control of
6    each shipment tendered by [JTS] from the time of pick-up until completion of delivery of the
7    shipment to the consignee," and Shelby "shall be liable to [JTS/s] customer, or to [JTS], as
8    assignee of the claim, for loss of, damage to, or delay of shipments according to the provisions of
9    [the Carmack Act]").

10    In light of all of the factors discussed above, the Court concludes that a default judgment is
11    appropriate.

C.    Relief

The only remaining is what relief is appropriate. JTS has provided evidence that the value of the lost cargo was $60,302.48. That is the amount of the claim that JTS's customer made against JTS and the amount that JTS paid the customer (for which the customer then assigned its claim against Shelby to JTS). *See* Caeton Decl. ¶ 4 & Ex. B (letter).

JTS argues that it is entitled not only to the above compensatory damages but also (1) attorneys' fees and (2) interest, with interest accruing as of October 17, 2023, when JTS submitted a claim to Shelby. *See* Caeton Decl. ¶ & Ex. C (email). In support of its position, JTS cites the contract between the parties which provides that "[t]he prevailing party in any litigation or arbitration will be entitled to recover from the other party all of the costs and expenses incurred by the prevailing party in connection with such litigation or arbitration, including, without limitation, reasonable attorneys' fees and interest from the date of loss." Compl., Ex. A (Agmt. § 35).

With respect to interest, JTS has calculated interest at a rate of 10%, from October 17, 2023, to November 4, 2024 (*i.e.*, the date it filed its motion for default judgment). *See* Mot. at 3. It explains that it applied a rate of 10% based on California Civil Code § 3289(b) which provides that, "[i]f a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." Cal. Civ. Code

8

§ 3289(b). The Court finds that a date of loss of October 17, 2023, is reasonable as is the 10% rate. *See* Compl., Ex. A (Agmt. § 35) (providing that the "Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to rules relating to conflict of laws"). Using these inputs, the Court agrees with Plaintiffs that interest from October 17, 2023, to November 4, 2024, amounts to $6,344.15.[2]

This leaves attorneys' fees. JTS has not asked at this time for a specific amount in fees but rather states that it will seek relief if the Court grants its motion for default judgment. The Court now grants that motion and orders JTS to file its motion for fees by February 6, 2025.

### III.   CONCLUSION

For the foregoing reasons, the Court grants the motion for default judgment and awards JTS $60,302.48 in compensatory damages, plus $6,344.15 in interest (from October 17, 2023, to November 4, 2024). The Court orders JTS to file its motion for attorneys' fees by February 6, 2025.

This order disposes of Docket No. 18.

**IT IS SO ORDERED**.

Dated: January 27, 2025

_____
EDWARD M. CHEN
United States District Judge

---

[2] Ten percent of $60,302.48 = $6,030.25.

$6,030.25/365 days = $16.52/day.

384 days x $16.52/day = $6,344.15.

9